AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
) Case No. '23 MJ4184
Phone number: (562) 405-2737 )
IMEI: 355591193580437, serviced by AT&T )
("Target Account") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Alien Smuggling |

The application is based on these facts:
See Attached Affidavit, incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Gabriela Nicasio, Enforcement Agent, CBP
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by ___telephone___ *(specify reliable electronic means)*.

Date: ___11/15/2023___

*Judge's signature*

City and state: San Diego, California    Hon. Barbara L. Major, United State Magistrate Judge
*Printed name and title*

## ATTACHMENT A

AT&T hosts the electronic communication account associated with the telephone number (562) 405-2737 and/or IMEI 355591193580437 that is the subject of this search warrant and search warrant application (the "**Target Account**").

AT&T is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 11760 U.S. Highway 1, North Palm Beach, Florida, 33408.

## ATTACHMENT B

**I.**   Service of Warrant

The officer executing the warrant shall permit the Provider in Attachment A, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.**   Items to be Seized

Agents shall seize the following records, data, and information covering November 8, 2022 to December 8, 2022 and maintained by the Provider for the **Target Account** identified in Attachment A:

   a. Subscriber information, including:
      i. Names;
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities; and
      viii. Means and source of payment (including any credit card or bank account number) and billing records.

   b. Records and other information about past wire or electronic communications sent or received by the **Target Account**, including:

      i. the date and time of the communication;
     ii. the method of the communication;
    iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; [and]
    iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications; [and]
     v. All available PCMD reports, to include timing advance data, for November 8, 2022 to December 8, 2022.

which are evidence of violations of 8 U.S.C. § 1324 (Alien Smuggling).

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, Gabriela Nicasio, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a search warrant for AT&T Corporation, 11760 U.S. Highway 1, North Palm Beach, Florida, 33408, as described in Attachment A, to search the account associated with the following cellular telephone number and International Mobile Equipment Identity ("IMEI") number:

**Phone number: (562) 405-2737**

**IMEI: 355591193580437, serviced by AT&T**

(the "**Target Account**") believed to be used by Defendant Johnny Ernest SILVA, for subscriber information, telephone toll data, and cell-site geolocation data from November 8, 2022 to December 8, 2022. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 8, United States Code Section 1324, as described in Attachment B. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, AT&T provides electronic communication services in the form of cellular and wireless telephone service for the **Target Account**.

## EXPERIENCE & TRAINING

2. I have been employed by U.S. Customs and Border Protection since 2003 and am currently assigned to the San Ysidro Criminal Enforcement Unit. I graduated from the CBP Basic Academy at the Federal Law Enforcement Training Center in Glynco, Georgia. I am a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C), Federal Rules of Criminal Procedure and have been a Federal Law Enforcement Officer for twenty years. I am authorized by Rule 41(a) Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience and have received training with respect to conducting

investigations of immigration and criminal violations of Titles 8, 18, 19, and 21 of the United States Code.

3. My current duties involve the preparation of criminal and administrative cases for prosecution, including the use of linking related subjects and information via electronic equipment and telephones. In the course of my duties, I investigate and prepare for prosecution cases against persons involved in the inducement, transportation, and harboring of illegal aliens into and within the United States; and, the utilization of illegally-obtained, counterfeit, altered or genuine immigration documents by illegal aliens to illegally gain entry or remain in the United States.

4. During my tenure as a CBP Officer, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.

5. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence like phone numbers and contact information of co-conspirators. It is common for alien smugglers to be in contact with co-conspirators weeks to months in advance of an event to recruit drivers and to coordinate the event. It is also common for co-conspirators to continue to contact each other by, among other things, phone calls when contact is lost with the driver after an apprehension has occurred.

6.  The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

7.  On December 8, 2022, at approximately 1:08 P.M, a United States Customs and Border Protection (CBP) Canine Enforcement Officer (CEO) was conducting pre-primary roving operations at the San Ysidro, California Port of Entry vehicle primary lanes, utilizing his Narcotic and Human Detection Dog (NHDD), when he came into contact with Johnny Ernest SILVA (Defendant), who was the driver and sole visible occupant of a gray 2007 Ford Explorer. The CBP CEO's NHDD then alerted to the undercarriage of the vehicle. The CBP CEO radioed for assistance and an Anti-Terrorism and Contraband Enforcement Team (A-TCET) CBP Officer responded. Upon inspection, Defendant presented his United States Passport and said he was going to Gardena, California with nothing to declare from Mexico. Defendant said he owned a home in Mexico and claimed to have owned the vehicle for two weeks. The CBP CEO then conducted a cursory inspection of the vehicle by opening the tailgate and lifting the floor compartment cover, where he discovered two people hidden underneath. Defendant was placed in handcuff restraints and escorted to the security office. The vehicle was driven to the secondary inspection lot by another officer.

8. In secondary, responding officers assisted in extricating two individuals from the compartment by removing two covers that were screwed in place. The individuals were later identified as Jorge Luis TAPIA-Martinez (MW1) and Cesar Armando AMBRIZ-Gabriel (MW2); both were determined to be citizens of Mexico without legal documents to enter, pass through or remain the United States.

9. In the security office, MW1 was queried by fingerprint and photograph comparison through the Automated Biometric Identification System (IDENT) and the Integrated Automated Fingerprint Identification System (IAFIS). IDENT and IAFIS returned a match to the query linking MW1 to Federal Bureau of Investigation (FBI) and Department of Homeland Security (DHS) records which identified MW1 as a citizen of Mexico and a previously deported alien.

10. Further DHS records confirmed MW1 is a citizen of Mexico without documents or entitlements to enter the United States. DHS records revealed MW1 was ordered removed from the United States to Mexico by Immigration authorities on or about November 9, 2013, and subsequently physically removed from the United States to Mexico on November 24, 2013, via San Ysidro, California. MW1 was most recently removed from the United States to Mexico on or about November 28, 2022, via San Ysidro, California, pursuant to a Reinstatement of Deport Order. DHS records contain no evidence MW1 has applied for or received permission from the United States Attorney General or his designated successor, the Secretary of Homeland Security to legally re-enter the United States.

11. During a video-recorded interview, MW2 admitted he is a citizen of Mexico without documents enter the United States. The Material Witness stated he made arrangements to be smuggled into the United States and was going to pay $15,000.00 USD upon successful entry. MW2 stated he was going to Los Angeles, California to work.

FOR SEARCH WARRANT
-4-

12. A cellular phone was discovered on the front passenger seat of SILVA's vehicle by a Customs and Border Protection Officer who was tasked to inspect the vehicle and inventory all the property seized from it. A subsequent download of the phone pursuant to a warrant confirmed that the phone used the **Target Account**.

13. A review of SILVA's crossing history from Mexico into the United States showed a recent increase in crossings, consistent with that of someone trying to establish a regular crossing history in an effort to avoid suspicions when entering the United States. For example, before November 2022, SILVA had only two crossings from Mexico into the United States, one each in March and August of 2022. Then, beginning on November 26, 2022 and through December 8, 2022, Defendant crossed into the United States five times. Four of those crossings were in the vehicle used in the instant offense. And in at least one of the crossings, SILVA appeared to be in the United States for only less than an hour.

14. At his recent jury trial on alien-smuggling charges (that resulted in a mistrial), SILVA testified concerning some of his prior trips into the United States. For one trip in the days before he was arrested, for example, SILVA testified that he went only to a guitar store and clothing store before returning to Mexico. The information sought by this warrant could be used to impeach this testimony.

15. The information sought by this warrant also is relevant to establishing SILVA's recruitment to smuggle the aliens and ongoing communications with co-conspirators to facilitate the smuggling event, in addition to the attribution of the phone to SILVA. In my experience and consultation with law enforcement officers experienced in alien smuggling investigations, drivers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators before the crossing to discuss the recruitment, make the smuggling arrangements, receive instructions, and report their locations. The calling records associated with the **Target Account** (along with their times, durations, method, and destination) are thus relevant. And information

-5-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

like subscriber information and means and source of payment is relevant to attributing the phone to SILVA, including his control over it.

16. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that AT&T routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

17. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

   a. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance" data.

18. This application requests such per call measurement data (by whatever name the provider uses) the **Target Account** for the following date and time range: November 8, 2022 12:00 AM PST through December 8, 2022 11:59 PM PST. During this time period, the subscriber for the **Target Account** is believed to have been located in the vicinity of San Diego, California and Tijuana, Mexico.

-6-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

19. Given these facts, I seek a warrant to search the **Target Account** for the records and information in Attachment B.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

20. The United States obtained a warrant for this evidence on November 3, 2023 that was signed by U.S. Magistrate Judge Daniel E. Butcher (*see* 23-MJ-4056-DEB), but it was mistakenly directed at Verizon which stated that the number was instead serviced by AT&T. The United States also previously obtained a warrant for SILVA's phone, but a subsequent forensic download was limited due to the encryption on the phone: The download lacked, among other things, any call logs.

### CONCLUSION

21. Accordingly, I request this Court issue an Order:

a. Directing AT&T to disclose published and non-published subscriber information for the **Target Account** to include: Subscriber name; address; local and long-distance connection records; length of service (including start date) and types of services utilized; telephone number or instrument number or other subscriber name or identity; and means and source of payment for such service (including any credit card or bank account number;

b. Directing AT&T to disclose records of cell site and cell sector activations by the **Target Account** during the period of November 8, 2022, to December 8, 2022; and

c. It is further requested all cell detail records be provided in an electronic format specified by any Customs and Border Protection Officer.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Gabriela Nicasio
Enforcement Officers
U.S. Customs and Border Protection

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 15th day of November 2023.

HON. BARBARA L. MAJOR
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-8-